IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **ROBBIE KELLY and** | § | |
| **KEVEN ROBERTSON,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 7:11-cv-00072-O** |
| | § | |
| **CHRIST ACADEMY f/k/a THE** | § | |
| **EPISCOPAL SCHOOL OF** | § | |
| **WICHITA FALLS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## JURY CHARGE

In accordance with the Court's August 11, 2011 Scheduling Order, as modified by the Court's May 2, 2012 Order, the parties submit the following Agreed Charge.

**AGREED AS TO FORM AND TO SUBSTANCE UNLESS OBJECTED TO OR OTHERWISE INDICATED:**[1]

**Counsel for Plaintiff Robbie Kelly:**

  /s/ Rod Tanner
Rod Tanner
State Bar No. 19637500
TANNER AND ASSOCIATES, P.C.
1205 North Main Street
Fort Worth, Texas 76164
Telephone: 817.377.8833
Telecopier: 817.377.1136

---

[1] Christ Academy reserves the right to submit further objections and/or instructions if the evidence presented at trial fails to support a proposed, agreed, or submitted instruction.  All objections and jury instructions are submitted subject to Defendant's Motion for Summary Judgment currently pending before the Court.

**Counsel for Plaintiff Keven Robertson:**


  /s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
KLEIMAN LAWRENCE BASKIND FITZGERALD, LLP
8350 North Central Expressway, Suite 650
Dallas, Texas 75206
Telephone: 214.265.7400
Telecopier: 214.265.7411

**Counsel for Defendant Christ Academy f/k/a
The Episcopal School of Wichita Falls, Inc.:**


  /s/ Monte K. Hurst
Monte K. Hurst
State Bar No. 00796802
Lauren Z. Farkas
State Bar No. 24066334
HERMES SARGENT BATES, LLP
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: 214.749.6000
Telecopier: 214.749.6100

## CERTIFICATE OF SERVICE

This is to certify that on July 23, 2012, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system, which will transmit a Notice of Electronic Filing to the following counsel, all ECF Registrants:

Monte K. Hurst
Lauren Z. Farkas
Hermes Sargent Bates LLP
901 Main Street, Suite 5200
Dallas TX 75202
214.749.6000
214.749.6100 (fax)

Rod Tanner
Tanner & Associates, P.C.
1205 North Main Street
Fort Worth, Texas 76164
817.377.8833
817.377.1136 (fax)

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald

**Court's Instruction No. 1**

## 1.1 PRELIMINARY INSTRUCTIONS

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case.  As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure.  From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence.  Then, the defendant will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence.  After all the evidence is completed, the lawyers will again address you to make final arguments.  Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial.  Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.  [Do not take notes.]

[Alternate 1:  You will need to rely on your memories.]

[Alternate 2:  If you would like to take notes during the trial, you may do so.  If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony.  Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes.  If you do not take notes, rely on your own independent memory of the testimony.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.]  Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits [may] [will] be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of

the case.  If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately.  Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them.  It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial.  Do not learn anything about the case from any other source.   [In particular, do not read any newspaper account of this trial or listen to any radio or television newscast concerning it.]  [Do not listen to any local radio or television newscasts until this trial is over, or read any local newspaper unless someone else first removes any possible reference to this trial.]

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 1.1 (2006).

**Court's Instruction No. 2**

**PARTY DEFINITIONS**

"Plaintiff" or "Plaintiffs" refers to Plaintiff Keven Robertson and/or Plaintiff Robbie Kelly.

"Defendant" or "Christ Academy" refers to Defendant Christ Academy.

**Court's Instruction No. 3**

## 2.3 STIPULATIONS OF FACT

The parties have agreed, or stipulated, that the facts listed below are true.  This means that both sides agree that this is a fact.  You must therefore treat this fact as having been proved.

1.      Kelly resides in Wichita Falls, Texas.

2.      Robertson resides in Wichita Falls, Texas.

3.      Christ Academy is an independent, multi-denominational parochial school governed by a Board of Trustees (the "Board") and is accredited by the Association of Christian Schools International.

4.      Christ Academy maintains an employment handbook which contains a  policy that Christ Academy does not discriminate against any employee with regard to any terms or conditions of employment because of such individual's race, color, gender, national, and ethnic origin in its hiring policies.

5.      The members of the Board of Trustees during the 2009-2010 academic school year were Benjamin (Chip) Filer, Matt Anderson, Janie Barry, Brady Beshear, Drew Carnes, Karen Chapman, John Phillip Dismukes, Johnelle Donnell, Anthony Levell, Laura Ramsey, Tom Stephens, Beth Sweet and Linda Waters.

6.      In 2010, the Board had seven committees:  Executive Committee; Development Committee; Finance Committee; Prayer Committee; Building Committee; Human Resources Committee; and Nominating Committee.

7.      The Finance Committee oversees the financial matters as directed by the Board.

8.      Christ Academy hired Robertson as the Junior High Principal effective July 1, 2001.

9.      Christ Academy employed Robertson as Junior High Principal for two years, Associate Principal for two years and Headmaster for five years.

10.     Robertson was promoted to Headmaster in 2005.

11.     Robertson's one-year contract for Headmaster was renewed for four additional one-year terms.

12.     As Headmaster, Robertson was responsible for the day-to-day operations of the school.  She was ultimately responsible for implementing the Board's financial policies and overseeing the financial operations of the school.

13.  In August 2006, Christ Academy hired Kelly as its part-time Development Director.

14.  As the Development Director, Kelly initially reported directly to the Board; however, in 2009, the organizational structure of Christ Academy changed and Kelly was required to report to the Headmaster instead.

15.  As the Development Director, Kelly was responsible for raising donations and pledges for Christ Academy's Annual Fund.  The Annual Fund was used to help finance Christ Academy's operating costs.

16.  In 2007, the Board began planning for a new facility and started a capital campaign.

17.  Due to Kelly's role as the fundraising coordinator for the school, her position as the Development Director adapted to address Christ Academy's need to raise capital contributions for a new facility.

18.  In 2009, Christ Academy offered Kelly a contract for a full-time position as Development Director at a salary of $42,000.

19.  Robertson's contract for Headmaster during the 2009-2010 academic school year was $57,915.00.

20.  Board members Benjamin Filer and Jeff Lemley gave Robertson a performance evaluation in April 2009.

21.  Tommy Sugg ("Sugg") was employed by Christ Academy as Athletic Director.

22.  On March 2, 2010, Sugg sent Benjamin Filer a text message that read "Keven could sure use your help in taking the lead w/ [Family M] situation – a man is needed!  Thanks for all you do for CA.  T. Sugg."

23.  On March 2, 2010, Robertson requested a meeting with Benjamin Filer, Drew Carnes, Phil Dismukes, Brady Beshear and Anthony Levell to discuss a personnel issue.

24.  On March 4, 2010, the Nominating Committee held a meeting.  During the meeting, several issues were raised regarding Robertson and the School's administration.  The members determined that it was necessary to call a Special Board Meeting to discuss the issues with the other members of the Board.

25.  On March 5, 2010, Robertson met with Benjamin Filer, Drew Carnes, Phil Dismukes and Brady Beshear, and discussed Sugg.

26.  On March 6, 2010, Benjamin Filer sent an e-mail message to the other members of the Board calling for a Special Board Meeting on March 9, 2010.

27. On March 9, 2010, the Board held a Special Board Meeting.  During the meeting, the Board made the decision to request Robertson's and the Elementary School Principal's, Deanna Draper, resignation.  The following Board members were present at the meeting:  Benjamin Filer, Drew Carnes, Janie Barry, Laura Ramsey, Anthony Levell, Brady Beshear, John Phillips Dismukes, Karen Chapman, Johnelle Donnell and Beth Sweet.

28. On March 10, 2010, Benjamin Filer met with Robertson to communicate the Board's decision and request her resignation.  Mr. Filer told her that the reason for the request was due to her lack of leadership and that the School was going to lose 25 families.

29. On March 29, 2010, the Board held a Board meeting.  The following Board members were present at the meeting:  Benjamin Filer, Drew Carnes, Janie Barry, Laura Ramsey, Brady Beshear, Phil Dismukes, Karen Chapman, Johnelle Donnell, Beth Sweet and Linda Waters.

30. On April 1, 2010, Benjamin Filer met with Kelly and informed her that Christ Academy was eliminating the position due to lack of funding.

31. Christ Academy hired Dr. Jerry Meadows to serve as its Chief Education Officer for the 2010-2011 academic school year.

32. On December 17, 2010, Robertson filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC").

33. On December 29, 2010, Kelly filed a charge of discrimination with the EEOC.

34. On March 25, 2011, the EEOC dismissed Kelly's charge of discrimination and advised Kelly of her right to bring suit within 90 days after receipt of the dismissal notice.

35. On June 21, 2011, the EEOC dismissed Robertson's charge of discrimination and advised Robertson of her right to bring suit within 90 days after receipt of the dismissal notice.

36. On June 21, 2011, Kelly filed this lawsuit.

37. Robertson joined in this lawsuit when an Amended Complaint was filed on June 23, 2011.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.3 (2006).

[FOR USE IF NEEDED]

**Court's Instruction No. 4**


**2.6 PUBLICITY DURING TRIAL**

If there is publicity about this trial, you must ignore it.  You must decide this case only from the evidence presented in the trial.  Do not read anything or listen to any TV or radio programs about the case.  [This instruction can be modified according to the extent of the case's notoriety].

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.6 (2006).

**Court's Instruction No. 5**

**2.7 BENCH CONFERENCES AND RECESSES**

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We meet because often during a trial something comes up that doesn't involve the jury.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.7 (2006).

[FOR USE IF NEEDED]

**Court's Instruction No. 6**

**2.8  Demonstrative Evidence**

Exhibit ___ is an illustration.  It is a party's [description or picture or model] to describe something involved in this trial.  If your recollection of the evidence differs from the exhibit, rely on your recollection.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction 2.8 (2006).

**Court's Instruction No. 7**

**2.13 BIAS—CORPORATE PARTY**

Do not let bias, prejudice or sympathy play any part in your deliberations.   A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.13 (2006).

**Court's Instruction No. 8**


**2.16 IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.16 (2006).

**Court's Instruction No. 9**

## 2.18 CONSIDERATION OF THE EVIDENCE

You must consider only the evidence in this case.  However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts.  The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.18 (2006).

**Court's Instruction No. 10**

**2.19 EXPERT WITNESSES**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.19 (2006).

**Court's Instruction No. 11**

**2.20 BURDEN OF PROOF WHEN ONLY PLAINTIFF HAS BURDEN**

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.20 (2006).

**Court's Instruction No. 12**

**2.21 USE OF NOTES TAKEN BY JURORS**

Any notes that you have taken during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.21 (2006).

**Court's Instruction No. 13**

**2.23 DEPOSITION TESTIMONY**

Certain testimony will now be presented to you through a deposition.   A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.   Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition.   Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.   A court reporter was present and recorded the testimony.   The questions and answers will be read (shown) to you today.   This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you insofar as possible in the same way] as if the witness had been present and had testified from the witness stand in court.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.23 (2006).

## Court's Instruction No. 14

**3.1 GENERAL INSTRUCTIONS FOR CHARGE**

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.]  [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another.  You may consider such evidence only for the specific limited purposes for which it was admitted.  (Specific limiting instructions may be repeated as appropriate.) ]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it,

because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory;  and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

[The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness.  Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.]

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case.  One is direct evidence—such as testimony of an eyewitness.  The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

[Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced

by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. [You may now retire to the jury room to conduct your deliberations.]

Source: 5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 3.1 (2006).

**Court's Instruction No. 15**

**2.11 DUTY TO DELIBERATE**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.11 (2006).

**Court's Instruction No. 16**

## 2.12 INSTRUCTIONS ON DELIBERATION

When you retire to the jury room to deliberate, you may take with you [this charge and] the exhibits that the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial.  After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form.  [Return this charge together with your written answers to the questions.]  Unless I direct you otherwise, do not reveal your answers until such time as you are discharged.  You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by meeting with you in the courtroom.  I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.12 (2006).

**Plaintiffs' Proposed
Court's Instruction No. 17**
(Defendant Christ Academy objects to Paragraphs 7-9)

## 11.5.1  Title VII---Discrimination---Disparate Treatment---Gender

1.  Keven Robertson claims she was discriminated against because of her gender.

2.  Robbie Kelly claims she was discriminated against because of her gender.

3.  Defendant denies Robertson's claims and contends Keven Robertson was terminated due to lack of leadership and poor job performance.

4.  Defendant denies Plaintiff Kelly's claims and contends Robbie Kelly's position was eliminated due to lack of funding, as well as concern about her aptitude and ability.

5.  It is unlawful for an employer to discriminate against an employee because of the employee's gender.

6.  To prove unlawful discrimination, Robertson and Kelly must prove by a preponderance of the evidence that Christ Academy terminated their employment because of their gender.

7.  **If the Plaintiffs can demonstrate that others with a discriminatory animus had influence or leverage over the official decision maker, it is proper to impute the discriminatory animus of the others to the formal decision maker.[2]**

8.  **Robertson and Kelly do not have to prove that unlawful discrimination was the only reason Christ Academy terminated them.[3]**

9.  **If you disbelieve the reason(s) Christ Academy has given for its decisions, you may infer Christ Academy fired Keven Robertson and/or Robbie Kelly because of their gender. [4]**

Source:  Adapted from 5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No.

---

[2]  *Staub v. Proctor*, 131 S.Ct. 1186 (2011); *Laxton v. Gap, Inc.*, 333 F.3d 572, 584 (5th Cir. 2003), citing *Russell v. McKinney Hospital Venture*, 325 F.3d 219 (5th Cir. 2000).
[3] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 & n.7 (1989).
[4] *Ratliff v. City of Gainesville*, 256 F.3d 355, 359-62 (5th Cir. 2001).

11.5.1,Title VII-Discrimination-Disparate Treatment---
Race/Color/Religion/Gender/National Origin (2009).

---

**Defendant's Objection to Paragraph 7:**

Paragraph 7 fails to properly set forth the standard issued by the United States Supreme Court in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011).   Moreover, Paragraph 7 should not be submitted to the jury because those asserted by Plaintiffs to have allegedly exerted influence—Tommy Sugg and Ron Jackson—were not Plaintiffs' supervisors.

The standard is as follows:  Under the general cat's paw theory, "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Roberson v. Alltell Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (emphasis added) (quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir. 2000)).   Accordingly, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the cat's paw,' for the subordinate employee's prejudice." *Laxton v. Gap, Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell*, 235 F.3d at 227).   To invoke the cat's paw analysis, Plaintiffs must submit evidence sufficient to establish two conditions: (1) a co-worker exhibited discriminatory animus; and (2) the same co-worker possessed leverage, or exerted influence, over the ultimate decision-maker. *Roberson*, 373 F.3d at 653 (quoting *Russell*, 235 F.3d at 227); *see also Laxton*, 333 F.3d at 583 ("The relevant inquiry is whether the [discriminatory supervisor] had influence or leverage over . . . the decision making").   Plaintiffs can show neither.

In *Staub v. Proctor Hospital*, the Supreme Court explained that "if a <u>supervisor</u> performs an act that is motivated by [discriminatory] animus that is intended by the <u>supervisor</u> to cause an adverse employment action, then the employer is liable."   131 S. Ct. at 1194 (underline emphasis added).   The *Staub* Court expressed "no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed the discriminatory act that influenced the ultimate employment decision*."   Id.* at FN4. Moreover, to establish a cat's paw mixed-motive case, a supervisor must make underlying recommendations and take action, based on that supervisor's own bias, specifically calculated to cause the adverse decision by the decision-maker, in this case Christ Academy's Board. *Id.* at 1193.   Plaintiffs have no such evidence.   Neither Ron Jackson nor Tommy Sugg supervised Plaintiffs.   In fact, Robertson was Sugg's supervisor.

In the event the Court rules that a cat's paw instruction is appropriate, Defendants propose the following instruction:

   **7.   If the Plaintiffs can demonstrate that a supervisor, or individual with more supervisory power than a mere co-worker or subordinate, possessed a discriminatory animus had influence or**

---

> **leverage over the official decision maker, it is proper to impute the discriminatory animus of the others to the formal decision maker**.

**Plaintiffs' Response to Defendant's Objection to Paragraph 7:**

Christ Academy incorrectly contends that Plaintiffs cannot include a cat's paw instruction unless a <u>supervisor</u> performed an act motivated by discriminatory animus that the <u>supervisor</u> intends to cause an adverse employment action. However, this is not a correct statement of the law. As Christ Academy's objection notes, the United States Supreme Court opinion in *Staub v. Proctor* expressed no opinion on whether a <u>co-worker</u> could have sufficient discriminatory animus and exert influence over the decision maker. However, the existing Fifth Circuit authority, clearly states that Plaintiffs can invoke the cat's paw analysis by (1) submitting evidence that a co-worker exhibited discriminatory animus and (2) that the same co-worker possessed leverage, or exerted influence, over the ultimate decision maker. *Roberson v. Alltell Information Services*, 373 F.3d 647, 653 (5th Cir. 2004)(quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

**Defendant's Objection to Paragraph 8 and 9:**

Paragraphs 8 and 9 are mixed motive instructions. There is no evidence in this case of mixed motive. Plaintiffs allege that even if Christ Academy's reason for terminating them are true, they can still support a gender discrimination claim by showing that another motivating factor was her gender. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Smith v. Xerox Corp.*, 602 F.3d 320, 332 (5th Cir. 2010). However, a case is either a pretext case or a mixed-motive case. *Smith*, 602 F.3d at 332-34. For this case to be a mixed-motive case, there must be evidence of such mixed-motive intent on the part of the Board—that Plaintiffs were fired for both proper and improper reasons. Plaintiffs have no evidence of mixed motive. Although Christ Academy acknowledges that Plaintiffs are not required to decide pretext or mixed motive pre-trial, Christ Academy presents this objection now in order to preserve it, and because no evidence of mixed motive has been ascertained during discovery.

**Plaintiffs' Response to Defendant's Objection to Paragraphs 8 and 9:**

Christ Academy appears to argue that Plaintiffs must state at the outset of the case whether the case is a pretext case or a mixed motives case. However, Plaintiffs are not required to do so. *Smith v. Xerox Corp.*, 602 F.3d 320, 332 (5th Cir. 2010). After the presentation of the evidence, if the Court finds that a mixed motives instruction is appropriate, the Court can submit the case to the jury on a mixed motives instruction. *Id.*

Paragraph 8 is not a mixed motives instruction.  Paragraph 8 is contained in the Fifth Circuit Labor and Employment Law Pattern Jury Charges (2009).   The Advisory Committee notes indicate that certain circuits take the position that  the *Desert Palace v. Costa*, 539 U.S. 90 (2003) "motivating factor" language applies in *all* Title VII disparage treatment cases, whether called "pretext" or "mixed motives" cases.   *See* Fifth Circuit Labor and Employment Law Pattern Jury Charges, p. iv.   The Advisory Committee notes that the Fifth Circuit has not yet made it clear which approach it will follow.  *Id.,*  p. v.

Because the Fifth Circuit has not yet decided which approach to take, the Advisory Committee recommended using the statutory language of "because of," but also included within the pattern instruction the same language that is reference in Paragraph 8.   The Advisory Committee noted that it would be appropriate to alter the causation language accordingly if the court determined that the case was a mixed motives case.

Paragraph 9 is not a mixed motives instruction.  Paragraph 9 is contained in the Fifth Circuit Labor and Employment Law Pattern Jury Charges and correctly sets forth the legal standard for determining whether the stated reason for an employer's action is a pretext for discrimination.

The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, be sufficient to show intentional   discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *Laxton v. Gap,* 333 F.3d 572, 579-80 (5th Cir. 2003).   In appropriate circumstances, the jury can infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves*, 530 U.S. at 147.

The Fifth Circuit has held that district courts have abused their discretion by refusing to include a permissive pretext instruction that specifically informs jurors that the jurors are permitted to, but need not, infer that an employer's actions were based on a prohibited motivation from evidence that the reasons that  the employer gave for its actions were mere pretext.   *See Ratliff v. City of Gainesville, Texas*, 256 F.3d 355, 359-60 (5th Cir. 2001); *Kanida v. Gulf Coast Medical Personnel L.P.*, 363 F.3d 568, 573 (5th Cir. 2004).

**Plaintiffs' Proposed**
**Court's Instruction No. 18**
(Defendant Christ Academy objects to Paragraphs 2, 10-14)
(Robbie Kelley objects to a portion of Paragraph 4 added by Christ Academy)

## 11.6.1  Title VII---Retaliation

1.  Plaintiff Keven Robertson claims she was retaliated against for engaging in activity protected by Title VII.

**2.  Plaintiff Robbie Kelly claims she was retaliated against for engaging in activity protected by Title VII.**

3.  Christ Academy denies Keven Robertson's claims and contends that it terminated Keven Robertson due to her lack of leadership and poor job performance.

**4.**  Christ Academy denies Robbie Kelly's claims and contends that it eliminated Robbie Kelly's position due to lack of funding, **as well as concern about her aptitude and ability.**

5.  It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII.

6.  To prove unlawful retaliation, Keven Robertson must prove by a preponderance of the evidence that Christ Academy took an adverse employment action against her because she engaged in protected activity.

7.  To prove unlawful retaliation, Robbie Kelly must prove by a preponderance of the evidence that Christ Academy took an adverse employment action against her because she engaged in protected activity.

8.  Protected activity[5] includes opposing an employment practice that is unlawful under Title VII, making a charge of discrimination, or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII.[6]  If the claim is for opposing an employment practice, Plaintiff must prove that she

---

[5] Committee Note:  Whether activity is protected by Title VII will generally be determined by the court as a matter of law.  If it has been established as a matter of law, or is not contested, the court may omit this paragraph.
[6] *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 520 (5th Cir. 2001); *see also* 42 U.S.C. § 2000e-3.

had at least a reasonable belief that the practice was unlawful under Title VII.[7]

9.   "Adverse employment action" is not confined to acts or harms that occur at the workplace.  It covers those (and only those) employer actions that could well dissuade a reasonable worker from making or supporting a charge of discrimination.[8]

10.   **If the Plaintiffs can demonstrate that others with a discriminatory animus had influence or leverage over the official decision maker, it is proper to impute the discriminatory animus of the others to the formal decision maker.[9]**

11.   **Keven Robertson does not have to prove that unlawful retaliation was the sole reason Christ Academy terminated her.[10]**

12.   **Robbie Kelly does not have to prove that unlawful retaliation was the sole reason Christ Academy terminated her.[11]**

13.   **If you disbelieve the reason(s) Christ Academy has given for its decision, you may infer Christ Academy terminated Keven Robertson because she engaged in protected activity.[12]**

14.   **If you disbelieve the reason(s) Christ Academy has given for its decision, you may infer Christ Academy terminated Robbie Kelly because she engaged in protected activity.[13]**

Source:  Adapted from 5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 11.6.1, Title VII-Retaliation (2009).

---

[7] *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).  Committee Note:  In many cases, the employee has opposed an employment practice that is unlawful under Title VII.  In cases where the employee has opposed an employment practice that was not actually made unlawful by Title VII, the court should also instruct the jury that the employee's actions must be based on a reasonable, good faith belief that the practice opposed actually violated Title VII, even if he or she was ultimately mistaken.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001).

[8] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58-59 (2006).

[9]  *Staub v. Proctor,*  131 S.Ct. 1196 (2011); *Laxton v. Gap, Inc.*, 333 F.3d 572, 584 (5th Cir. 2003), citing *Russell v. McKinney Hospital Venture*, 325 F.3d 219 (5th Cir. 2000).

[10] *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 & n.7 (1989).

[11]  *Id.*

[12] *Ratliff v. City of Gainesville*, 256 F.3d 355, 359-62 (5th Cir. 2001).

[13] *Id.*

**Defendant's Objection to Paragraph 2:**

Paragraph 2 is an improper instruction because Plaintiff Robbie Kelly did not engage in protected activity, even taking her evidence and allegations as true.  Kelly relies on the following two incidents to assert that she engaged in a protected activity: (1) her confrontation of Sugg regarding comments he supposedly made to Mr. Lemley that men do not want to sit across the table for a woman in a business deal; and (2) her volleyball complaint made as a Christ Academy parent.

Even accepting Kelly's allegations as true, neither incident constitutes a protected activity.  "An employee has engaged in an activity protected by Title VII if she has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."  *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)).  A complaint must at least alert the employer to employee's reasonable belief that unlawful discrimination is at issue.  *Carter v. Luminant Power Servs. Co.*, No. 3:10-cv-1486-L, 2011 U.S. Dist. LEXIS 140931, 49 (N.D. Tex. Dec. 6, 2011).  "Vague concerns and even vague assertions of discrimination are not sufficient to constitute an opposition to an unlawful employment practice."  *E.E.O.C. v. Omni Hotels Mgmt. Co.,* 516 F. Supp. 2d 678, 705 (N.D. Tex. 2007) (citing *Turner v. Claims Admin. Corp.,* 993 F. Supp. 982, 989 (W.D. Tex. 1998)).  Confronting Sugg about a stray remark and making a complaint as a parent regarding her daughter's volleyball team placement are not protected activity as a matter of law.  If the court rules in Christ Academy's favor with regard to this objection, Robbie Kelly is not entitled Question 2 on her Verdict Form.

**Plaintiffs' Response to Defendant's Objection to Paragraph 2**:

The language used in paragraph 2 merely sets forth Ms. Kelly's contention in regard to her retaliation claim.   The retaliation claim is set forth in Count Two of the First Amended Complaint (Document 6).  Kelly asserts that she was discharged in retaliation for her expression of opposition to unlawful employment practices in violation of 42 U.S.C. § 2000e-3.

Christ Academy's objection misstates the basis of her claim. There is abundant evidence that Tommy Sugg, a school administrator, harbored animosity toward females in the workplace, and Kelly had two personal experiences in this respect.  On one occasion, she learned that Sugg had made comments to Jeff Lemley, former President of the Board, that a man does not want to sit across the table from a woman in a business deal and, thus suggesting that a male should hold the position of Development Director.  Sugg plainly expressed his belief that Kelly should be replaced by a man. Kelly questioned Sugg about his remarks and expressed her opposition to his discriminatory views, as she stated that they were on "the same team" and should be working together. Kelly then complained to Keven Robertson, Headmaster, about his gender-biased conduct. On another occasion, Kelly and Sugg had a meeting concerning her daughter's participation on the volleyball team. He treated her in a

disrespectful and demeaning manner and ordered her to sit in a chair.  Kelly then presented another complaint to the Headmaster concerning the way in which Sugg treated her.

Later, Robertson conferred with several Board members concerning her view that it might be necessary to discharge Sugg because of his gender-based conduct toward employees, parents and students. She presented a file to the Board containing a number of written complaints and reports about Sugg. Kelly's complaints were among those that motivated Robertson to address the matter with the Board. The Board retaliated against Robertson and Kelly by discharging them. Drew Carnes, a Board member, destroyed the file containing the complaints about Sugg.

In both instances, Kelly alerted the employer to her reasonable belief that she had been subjected to unlawful discrimination.  Because she was discharged for her expression of opposition to an unlawful employment practice in violation of 42 U.S.C. § 2000e-3, submission of her contention to the jury is required.  *See Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (citing 42 U.S.C. § 2000e-3(a)); *Carter v. Luminant Power Servs. Co.*, No. 3:10-cv-1486-L, 2011 U.S. Dist. LEXIS 140931, 49 (N.D. Tex. Dec. 6, 2011).

**Plaintiff Robbie Kelly's Objection to a portion of Paragraph 4:**

There is no credible evidence supporting Christ Academy's claim that Robbie Kelly was discharged because of concerns about her aptitude and ability.  It is uncontroverted that at the time of Kelly's discharge, the Board of Trustees asserted her position was eliminated due to a lack of funding. No other reasons were cited in the written termination notice.  Chip Filer, then President of the Board and a principal decision-maker, told Kelly that her position was eliminated due to lack of funding.  He gave no other reason.  In his sworn deposition testimony, Filer admitted that the only reason for the purported elimination of Kelly's position was an alleged lack of funding.  Moreover, the contention that the Board would eliminate a vitally important position due to concerns about the employee's performance or aptitude defies logic.  In such circumstances, the school would replace Kelly, not eliminate her position. As the EEOC's case file reflects, Christ Academy never claimed any basis for Kelly's discharge other than a lack of funding until after she filed an EEOC charge and the school retained defense counsel.

**Defendant's Response to Robbie Kelly's Objection to a portion of Paragraph 4:**

Although the primary reason for eliminating her position as Development Director was a **lack of funds**, Robbie Kelly's **lack of aptitude and ability** was a factor in her dismissal.  It has been clear from the beginning that the Christ Academy Board took into consideration Robbie Kelly's lack of aptitude and ability.  In fact, the affidavit of Phil Dismukes presented in response to Robbie Kelly's EEOC charge, as well as early interrogatory responses in this litigation, make it clear that the Board was concerned about Robbie Kelly's ability to perform her job after that job became full-time and her

responsibilities involved a capital campaign.  Robbie Kelly's inappropriate behavior when in public situations and when speaking with possible donors, all the time knowing that she was the representative of Christ Academy charged with soliciting donations, showed her lack of aptitude and ability to perform the essential functions of her job.  Robbie Kelly's inappropriate behavior—as well as reports of her overt and public criticism of the school that employed her—showed a fundamental disrespect for her employer, a lack of advocacy on behalf of the school, and a complete lack of understanding of the essential functions of her job as Development Director.

**Defendant's Objection to Paragraph 10:**

Paragraph 10 fails to properly set forth the standard issued by the United States Supreme Court in *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011).  Moreover, Paragraph 10 should not be submitted to the jury because those asserted by Plaintiffs to have allegedly exerted influence—Tommy Sugg and Ron Jackson—were not Plaintiffs' supervisors.

The standard is as follows:  Under the general cat's paw theory, "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker."  *Roberson v. Alltell Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (emphasis added) (quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir. 2000)).  Accordingly, "the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the cat's paw,' for the subordinate employee's prejudice."  *Laxton v. Gap, Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Russell*, 235 F.3d at 227).  To invoke the cat's paw analysis, Plaintiffs must submit evidence sufficient to establish two conditions: (1) a co-worker exhibited discriminatory animus; and (2) the same co-worker possessed leverage, or exerted influence, over the ultimate decision-maker.  *Roberson*, 373 F.3d at 653 (quoting *Russell*, 235 F.3d at 227); *see also Laxton*, 333 F.3d at 583 ("The relevant inquiry is whether the [discriminatory supervisor] had influence or leverage over . . . the decision making").  Plaintiffs can show neither.

In *Staub v. Proctor Hospital*, the Supreme Court explained that "if a supervisor performs an act that is motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, then the employer is liable."  131 S. Ct. at 1194 (underline emphasis added).  The *Staub* Court expressed "no view as to whether the employer would be liable if a co-worker, rather than a supervisor, committed the discriminatory act that influenced the ultimate employment decision*."  Id.* at FN4.  Moreover, to establish a cat's paw mixed-motive case, a supervisor must make underlying recommendations and take action, based on that supervisor's own bias, specifically calculated to cause the adverse decision by the decision-maker, in this case Christ Academy's Board.  *Id.* at 1193.  Plaintiffs have no such evidence.  Neither Ron Jackson nor Tommy Sugg supervised Plaintiffs.   In fact, Robertson was Sugg's supervisor.

In the event the Court rules that a cat's paw instruction is appropriate, Defendants propose the following instruction:

**10. If the Plaintiffs can demonstrate that a supervisor, or individual with more supervisory power than a mere co-worker or subordinate, possessed a retaliatory animus had influence or leverage over the official decision maker, it is proper to impute the retaliatory animus of the others to the formal decision maker**.

**Plaintiffs' Response to Defendant's Objection to Paragraph 10**:

Christ Academy incorrectly contends that Plaintiffs cannot include a cat's paw instruction unless a <u>supervisor</u> performed an act motivated by discriminatory animus that the <u>supervisor</u> intends to cause an adverse employment action. However, this is not a correct statement of the law.  As Christ Academy's objection notes, the United States Supreme Court opinion in *Staub v. Proctor* expressed no opinion on whether a <u>co-worker</u> could have sufficient discriminatory animus and exert influence over the decision maker.  However, the existing Fifth Circuit authority, clearly states that Plaintiffs can invoke the cat's paw analysis by (1) submitting evidence that a co-worker exhibited discriminatory animus and (2) that the same co-worker possessed leverage, or exerted influence, over the ultimate decision maker.  *Roberson v. Alltell Information Services*, 373 F.3d 647, 653 (5th Cir. 2004)(quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir. 2000).

**Defendant's Objections to Paragraphs 11, 12, 13 and 14:**

Paragraphs 11, 12, 13 and 14 are mixed motive instructions.  There is no evidence in this case of mixed motive.  Plaintiffs allege that even if Christ Academy's reason for terminating them are true, they can still support a retaliation claim by showing that another motivating factor was her protected activity.  *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Smith v. Xerox Corp.*, 602 F.3d 320, 332 (5th Cir. 2010). However, a case is either a pretext case or a mixed-motive case.  *Smith*, 602 F.3d at 332-34.  For this case to be a mixed-motive case, there must be evidence of such mixed-motive intent on the part of the Board—that Plaintiffs were fired for both proper and improper reasons.  Plaintiffs have presented no evidence of mixed motive.  Although Christ Academy acknowledges that Plaintiffs are not required to decide pretext or mixed motive pre-trial, Christ Academy presents this objection now in order to preserve it, and because no evidence of mixed motive has been ascertained during discovery.

**Plaintiffs' Response to Defendant's Objections to Paragraphs 11, 12, 13 and 14:**

Christ Academy appears to argue that Plaintiffs must state at the outset of the case whether the case is a pretext case or a mixed motives case.  However, Plaintiffs are not

required to do so.  *Smith v. Xerox Corp.*, 602 F.3d 320, 332 (5th Cir. 2010).  After the presentation of the evidence, if the Court finds that a mixed motives instruction is appropriate, the Court can submit the case to the jury on a mixed motives instruction. *Id.*

Paragraph 8 is not a mixed motives instruction.  Paragraph 8 is contained in the Fifth Circuit Labor and Employment Law Pattern Jury Charges (2009).  The Advisory Committee notes indicate that certain circuits take the position that  the *Desert Palace v. Costa*, 539 U.S. 90 (2003) "motivating factor" language applies in *all* Title VII disparage treatment cases, whether called "pretext" or "mixed motives" cases.  *See* Fifth Circuit Labor and Employment Law Pattern Jury Charges, p. iv.  The Advisory Committee notes that the Fifth Circuit has not yet made it clear which approach it will follow.  *Id.,* p. v.

Because the Fifth Circuit has not yet decided which approach to take, the Advisory Committee recommended using the statutory language of "because of," but also included within the pattern instruction the same language that is reference in Paragraph 8.  The Advisory Committee noted that it would be appropriate to alter the causation language accordingly if the court determined that the case was a mixed motives case.

Paragraph 9 is not a mixed motives instruction.  Paragraph 9 is contained in the Fifth Circuit Labor and Employment Law Pattern Jury Charges and correctly sets forth the legal standard for determining whether the stated reason for an employer's action is a pretext for discrimination.

The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, be sufficient to show intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *Laxton v. Gap,* 333 F.3d 572, 579-80 (5th Cir. 2003).  In appropriate circumstances, the jury can infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Reeves*, 530 U.S. at 147.

The Fifth Circuit has held that district courts have abused their discretion by refusing to include a permissive pretext instruction that specifically informs jurors that the jurors are permitted to, but need not, infer that an employer's actions were based on a prohibited motivation from evidence that the reasons that  the employer gave for its actions were mere pretext.  *See Ratliff v. City of Gainesville, Texas*, 256 F.3d 355, 359-60 (5th Cir. 2001); *Kanida v. Gulf Coast Medical Personnel L.P.*, 363 F.3d 568, 573 (5th Cir. 2004).

**Defendant Christ Academy's Proposed**
**Court's Instruction No. 19**
(Plaintiffs Object to this Entire Instruction)

**Business Decisions**

**Christ Academy states that the decision to terminate Keven Robertson's employment  was a business decision.  Christ Academy states that the decision to eliminate Robbie Kelly's position was a business decision.  Even if you determine that these business decisions are unfounded or even wrong, you should not second-guess these decisions.  Indeed, federal discrimination laws were not intended to be a vehicle for second-guessing employment decisions, nor were they intended to transform the courts into personnel manager.  These decisions were only unlawful if based upon gender or if based upon retaliation for engagement in protected activity.**

Source:  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010); *Norwood v. Calpine Corp.*, Civ. Action No. H-04-2018, 2005 U.S. Dist. LEXIS 33851, 16-17 (S.D. Tex. Sept. 6, 2005).

---

**Plaintiffs' Objections to this Instruction:**

Plaintiffs object to inclusion of this instruction as an improper inferential rebuttal instruction.  An inferential rebuttal defense is different from an affirmative defense.  Rather than offering an independent reason for Christ Academy to prevail, it offers a factual theory of the case through this instruction that makes it impossible for Plaintiffs to win.  *See* Elizabeth G. Thornburgh, *The Power and The Process: Instructions and the Civil Jury*, 66 Fordham Law Review 1837, 1847 fn. 36 (1998).

Further, the Fifth Circuit Pattern Jury Charges contain no business judgment instructions since there are no Fifth Circuit decisions requiring or suggesting that such an instruction be given to the jury.  To the contrary, the Fifth Circuit has determined that it is not necessary to give this instruction in an employment discrimination case.  *Julian v. City of Houston*, 314 F.3d 721, 728 (5th Cir. 2002).  *See also Wichmann v. Board of Trustees of Southern Illinois University*, 180 F.3d 791, 805 (7th Cir. 1999), *vacated on other grounds*, 528 U.S. 1111 ("a defendant cannot escape the fact that a jury must use its good common sense in addressing how much, if at all, the foolishness or unfairness of the employer's decision weighs in the evidence of pretext"); *Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 350 (1st Cir. 1998); *Cooper v. Paychex, Inc.*, 165 F.3d 598 (4th Cir. 1998).

If this instruction is given over Plaintiffs' objection, Plaintiffs request that it be revised to read as follows:

**"Employers are free under the law to use their judgment, whether you agree with it or not, so long as decisions are not made because of an individual's gender or**

**in retaliation for an individual's protected activity."**

This alternative instruction is a fuller statement of the business judgment theory and is more consistent with Fifth Circuit authority.  *See, e.g.*, *Boehms v. Crowell et. al.*, 139 F.3d 452, 459 (5th Cir. 1998) (stating that, "while the ADEA should not transform courts into personnel managers, it is intended to protect older employees from employment decisions which are unlawfully motivated.").

---

**Defendant's Response to Plaintiffs' Objection:**

Defendant Christ Academy's wording in Instruction No. 19 reflects the wording of the cases cited as authority for this instruction.  The Fifth Circuit in *Moss* stated:

> The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. Tex. 2010); *Norwood v. Calpine Corp.*, Civ. Action No. H-04-2018, 2005 U.S. Dist. LEXIS 33851, 16-17 (S.D. Tex. Sept. 6, 2005) (adopting same wording in Title VII case).

**Court's Instruction No. 20**

**15.1 Consider Damages only if Necessary**

If the plaintiffs have proved their claims against Christ Academy by a preponderance of the evidence, you must determine the damages to which the plaintiffs are entitled.  You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case.  It is your task first to decide whether Christ Academy is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendants are liable and that the plaintiffs are entitled to recover money from the defendants.

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 2.22 (2006), 15.1 (2009).

**Court's Instruction No. 21**

## 11. 8 Title VII Damages

**A.     Instructions**

1.     If you found that Christ Academy violated Title VII, then you must determine whether Christ Academy has caused Keven Robertson and/or Robbie Kelly damages and, if so, you must determine the amount, if any, of those damages.

2.     Keven Robertson must prove her damages by a preponderance of the evidence.  Your award must be based on evidence and not speculation or guesswork.  On the other hand, Keven Robertson need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.  Robbie Kelly must prove her damages by a preponderance of the evidence.  Your award must be based on evidence and not speculation or guesswork.  On the other hand, Robbie Kelly need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.[14]

3.     You should consider the following elements of damages, and no others:  (1) economic loss, which includes back pay and benefits; (2) punitive damages, and (3) compensatory damages, which include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non pecuniary losses.[15]

4.     Back pay and benefits include the amounts the evidence shows Keven Robertson and/or Robbie Kelly would have earned had she remained an employee of Christ Academy and includes fringe benefits such as life and health insurance, stock options, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, Christ Academy proves by a preponderance of the evidence, that Keven Robertson and/or Robbie Kelly received in the interim.[16]

5.     Christ Academy asserts that Plaintiffs Keven Robertson and Robbie Kelly failed to mitigate damages.[17]   To prevail on this defense,

---

[14] *United States v. U.S. Steel*, 520 F.2d 1043, 1050 (5th Cir. 1975).
[15] Section 1981a also provides that a plaintiff may recover for "future pecuniary losses," which by definition does not include front pay.  *Pollard v. E.I. DuPont de Numours & Co.*, 532 U.S. 843 (2001).
[16] *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir. 1981).
[17] This instruction should be used only when Defendant asserts the affirmative defense that Plaintiff failed to mitigate his or her damages.

Christ Academy must show, by a preponderance of the evidence, that: (a) there were "substantially equivalent employment" positions available; (b) Keven Robertson and/or Robbie Kelly failed to use reasonable diligence in seeking those positions; and (c) the amount by which Keven Robertson's and/or Robbie Kelly's damages were increased by the failure to take such reasonable actions.[18]

6.   "Substantially equivalent employment" means a job that has virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the job she lost. Keven Robertson and/or Robbie Kelly does not have to accept a job that is dissimilar to the one lost, one that would be a demotion, or one that would be demeaning.[19]  The reasonableness of Keven Robertson and/or Robbie Kelly's diligence should be evaluated in light of the individual characteristics of Keven Robertson and/or Robbie Kelly and the job market.[20]

7.   There is no exact standard for determining compensatory damages.  You are to determine an amount that will fairly compensate Keven Robertson and/or Robbie Kelly for any injury she has sustained.[21]  Do not include as compensatory damages back pay or interest on back pay and/or benefits.

8.   Punitive damages are those damages designed to punish a defendant and to deter a defendant and others from engaging in similar conduct in the future.[22]

9.   In this case you may award punitive damages if Keven Robertson and/or Robbie Kelly proves by a preponderance of the evidence that:  (1) the individual who engaged in the discriminatory act(s) or practice(s) was a managerial employee; (2) [he/she] engaged in the discriminatory act(s) or practice(s) while acting in the scope of [his/her] employment; and (3) [he/she] acted with malice or reckless indifference to Plaintiff's federal protected right to be free from discrimination.[23]

10.   If Keven Robertson and/or Robbie Kelly have proven these facts, then you may award punitive damages, unless Christ Academy proves by a preponderance of the evidence that the act was

---

[18] *50-Off Stores, Inc. v. Banques Paribas (Suisse), S.A.*, 180 F.3d 247, 258 (5th Cir. 1999); *Floca v. Homecare Health Servs., Inc.*, 845 F.2d 108 (5th Cir. 1988); *Ballard v. El Dorado Tire Co.*, 512 F.2d 901, 906 (5th Cir.1975).
[19] *Ford Motor Co. v. EEOC*, 458 U.S. 219 (1982).
[20] *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1993 (5th Cir. 1999).
[21] SEVENTH CIR. PATTERN JURY INSTR. 7.23
[22] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.4 (5th Cir. 1999).
[23] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 n.4 (5th Cir. 1999).

contrary to the employer's good faith efforts to prevent discrimination in the workplace.[24]

11.    In determining whether [employee] was a "managerial employee" of Defendant, you should consider the type of authority [employee] had over Keven Robertson and/or Robbie Kelly and whether Christ Academy delegated employment decisions to [employee].[25]

12.    An action was in "reckless indifference" to Keven Robertson's and/or Robbie Kelly's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law.[26] Keven Robertson and/or Robbie Kelly are not required to show egregious or outrageous discrimination to recover punitive damages.    However, proof that Christ Academy engaged in intentional discrimination is not enough in itself to justify an award of punitive damages.[27]

13.    In determining whether Christ Academy made "good faith efforts" to prevent discrimination in the workplace, you may consider things like whether it adopted anti-discrimination policies, whether it educated its employees on the federal anti-discrimination laws, how it responded to Keven Robertson's or Robbie Kelly's complaint of discrimination, and how it responded to other complaints of discrimination.[28]

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 11.8, Title VII and ADA Damages (2009).

---

[24] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 545-46 (1999); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 281, 286 (5th Cir. 1999).

[25] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 285 (5th Cir. 1999); *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

[26] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).

[27] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999).

[28] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72 (1986); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 286 (5th Cir. 1999).

**Court's Instruction No. 22**

**15.4   Emotional Pain and Suffering / Inconvenience / Mental Anguish/ Loss of Enjoyment of Life**

You may award damages for any pain and suffering, mental anguish, and/or loss of capacity for enjoyment of life that the plaintiffs experienced in the past or will experience in the future as a result of Christ Academy's conduct.  No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced.  You are not trying to determine value, but an amount that will fairly compensate the Keven Robertson and/or Robbie Kelly for the damages they have suffered.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award that you make should be fair in light of the evidence.

Source:  5th Circuit Pattern Jury Charge (Civil Cases), Instruction No. 15.4 (2006).

**Defendant Christ Academy's Proposed
Court's Instruction No. 23**
(Plaintiffs Object to this Entire Instruction)

**15.5   Aggravation or Activation of Disease or Defect**

You may award damages for aggravation of any existing pain and suffering, mental anguish, and/or loss of capacity for enjoyment of life resulting from Christ Academy's conduct. If you find that there was such an aggravation, you should determine, if you can, what portion of the Keven Robertson and/or Robbie Kelly's condition resulted from the aggravation, and make allowance in your verdict only for the aggravation.

Source: 5th Circuit Pattern Jury Charge (Civil Cases), Instruction No. 15.5 (2006) (modified for the Title VII damages requested by Keven Robertson and Robbie Kelly of pain and suffering, mental anguish, and/or loss of capacity for enjoyment of life).

---

**Plaintiffs' Objection:**

Plaintiff objects to this instruction. Neither Plaintiff's medical condition is in controversy in this lawsuit. Both Plaintiffs assert garden variety claims for mental anguish and emotional distress. *See Burrell v. Crown Central Petroleum Inc.*, 177 F.R.D. 376 (1997). This instruction is not necessary and is likely to be confusing.

---

**Defendant's Response to Plaintiffs' Objection:**

There is evidence from medical records and deposition testimony that both Plaintiffs had pre-existing conditions of mental anguish, emotional distress, depression, anxiety, pain and suffering, and loss of enjoyment of life. Both had experienced a divorce, both were under a doctor's care, both sought counseling, one had extensive recent health challenges, and at least one Plaintiff experienced anguish-inducing issues with her child. Both were taking medications for such conditions many years before their employment ended at Christ Academy. As noted by the court in *Valdez v. Church's Fried Chicken, Inc.*, 683 F. Supp. 596, 612 (W.D. Tex. 1988), "It is hornbook law that a Plaintiff cannot recover damages unless she can show proximate cause between the wrongful conduct of the defendant and the injuries complained of." The *Valdez* court noted that the plaintiff would only be entitled to a damage award for the aggravation of the plaintiff's pre-existing general anxiety and depression. *Id.* at 617. Consequently, in its findings of fact and conclusions of law, the court refused to award damages for aggravation of anxiety and depression as follows:

> The Court is similarly disinclined to make any damage award for aggravation of Plaintiff's general anxiety and depression. The Court finds that Plaintiff suffered severe psychological problems before her employment at Church's and it is not possible to attribute any aggravation

of these problems to Defendant's conduct.

*Id.*   Because Plaintiffs seek damages for mental anguish, emotional distress, pain and suffering, and loss of enjoyment of life, they have necessarily placed at issue their prior emotional health and have also placed at issue other significant life complications—unrelated to their employment—which have impacted their emotional health.   As such, Defendant Christ Academy is entitled to an aggravation instruction.

**Court's Instruction No. 24**

**15.14 MULTIPLE CLAIMS**

You must not award compensatory damages more than once for the same injury to the same plaintiff.  For example, if a plaintiff prevails on two claims and establishes a dollar amount for her injuries, you must not award her any additional compensatory damages on each claim.  A plaintiff is only entitled to be made whole once, and may not recover more than she has lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of her injuries.

With respect to punitive damages, you may make separate awards on each claim that a plaintiff has established.

Source:  5th Circuit Pattern Jury Charge (Civil Cases), Instruction No. 15.14 (2006) (modified for multiple plaintiffs with multiple claims and one defendant).

**Jury Questions----Keven Robertson**

## Question No. 1

Did Christ Academy terminate Keven Robertson because of Keven Robertson's gender?

Answer "Yes" or "No

_____

## Question No. 2

Did Christ Academy take an adverse employment action against Keven Robertson  because Keven Robertson  engaged in protected activity?

Answer "Yes" or "No."

_____

If you answered either Question No. 1 or No. 2 "yes," then answer Question No. 3.

## Question No. 3(a)

What sum of money, if paid now in cash, would fairly and reasonably compensate Keven Robertson for the damages, if any, you have found Christ Academy caused Keven Robertson?

Answer in dollars and cents for the following items and none other:

Back pay and benefits:

_____

Emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life:

_____

## Question No. 3(b)

Based on the evidence presented, do you find that Keven Robertson should be awarded punitive damages?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 3(b), then answer the following Question:

**<u>Question No. 3(c)</u>**

What sum of money should be assessed against Christ Academy as punitive damages for Keven Robertson?

Answer in dollars and cents:

_____

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 11.8 and Jury Questions , Title VII and ADA Damages (2009).

**Jury Question---Keven Robertson**

The foreperson should sign and date the Form of Verdict.


_____          _____

Foreperson                                                    Date

**Jury Questions----Keven Robertson**

We, the jury, have answered the above and foregoing jury questions, as indicated and return the same to the Court as our verdict.

To be signed by the presiding juror if unanimous.

_____
Presiding Juror

To be signed by those rendering the verdict if not unanimous:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

**Jury Questions---Robbie Kelly**

**<u>Question No. 1</u>**

Did Christ Academy terminate Robbie Kelly because of Robbie Kelly's gender?

Answer "Yes" or "No."

_____

**<u>Question No. 2</u>**

Did Christ Academy take an adverse employment action against Robbie Kelly because Robbie Kelly  engaged in protected activity?

Answer "Yes" or "No."

_____

If you answered either Question No. 1 or No. 2 "yes," then proceed to Question No. 3.

**<u>Question No. 3(a)</u>**

What sum of money, if paid now in cash, would fairly and reasonably compensate Robbie Kelly for the damages, if any, you have found Christ Academy caused Robbie Kelly?

Answer in dollars and cents for the following items and none other:

Back pay and benefits:

_____

Emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life:

_____

**<u>Question No. 3(b)</u>**

Based on the evidence presented, do you find that Robbie Kelly should be awarded punitive damages?

Answer "Yes" or "No."

_____

If you answered "Yes" to Question No. 3(b), then answer the following Question:


**Question No. 3(c)**

What sum of money should be assessed against Christ Academy as punitive damages for Robbie Kelly?

Answer in dollars and cents:

_____

Source:  5th Circuit Pattern Jury Instructions (Civil Cases), Instruction No. 11.8 and Jury Questions , Title VII and ADA Damages (2009).

**Jury Question---Robbie Kelly**

The foreperson should sign and date the Form of Verdict.


_____          _____

Foreperson                                          Date

**Jury Questions----Robbie Kelly**

We, the jury, have answered the above and foregoing jury questions, as indicated and return the same to the Court as our verdict.

To be signed by the presiding juror if unanimous.

_____
Presiding Juror

To be signed by those rendering the verdict if not unanimous:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____