

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ROBBIE KELLY, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 7:11-cv-72-O |
| CHRIST ACADEMY f/k/a THE EPSICOPAL SCHOOL OF WICHITA FALLS, INC. | § § § § § | |
| Defendant. | § § § | |

### JURY CHARGE

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

During the course of these instruction, I will refer to Keven Robertson as Plaintiff or Robertson; Robbie Kelly as Plaintiff or Kelly; and Christ Academy f/k/a The Episcopal School of Wichita Falls, Inc. as Christ Academy or Defendant.

The case of each Plaintiff and the evidence pertaining to that Plaintiff should be considered separately and individually. The fact that you may find for, or against, one of the Plaintiffs should not control your verdict as to another Plaintiff.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he

testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

In this case, the Plaintiffs must prove every essential part of their respective claims by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish each element of each individual plaintiff's claims by a preponderance of the evidence, you should find for the defendant as to that claim.

Certain testimony was presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers were read to you. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible in the same way as if the witness had been present and had testified from the witness stand in court.

As I have previously stated to you, Kelly and Robertson sued Christ Academy for violation of their rights under Title VII of the Civil Rights Act of 1964. Pursuant to that Act, an individual who believes her rights have been infringed upon must first file a "Charge of Discrimination" with the Equal Employment Opportunity Commission, or the EEOC as it is called, before she may bring a lawsuit. Each Plaintiff filed a charge in this case as required by law.

Upon receiving those charges, the EEOC must investigate the allegations. The EEOC was unable to conclude that the information obtained established violations of the statute in these cases. But the EEOC did not certify that Christ Academy was in compliance with the statute. No findings were made as to any other issues that may have been raised by the charges.

The EEOC's Notices of Dismissal and Right to File a Civil Action are not an adjudication of rights and liabilities. While the Notices may provide you with background, you should not consider them as conclusive of any factual issue in this case, and they are not binding in your determinations.

**STIPULATIONS OF FACT**

The parties have agreed, or stipulated, that the facts listed below are true. This means that both sides agree that this is a fact. You must therefore treat this fact as having been proved.

1. Kelly resides in Wichita Falls, Texas.

2. Robertson resides in Wichita Falls, Texas.

3. Christ Academy is an independent, multi-denominational parochial school governed by a Board of Trustees (the "Board") and is accredited by the Association of Christian Schools International.

4. Christ Academy maintains an employment handbook which contains a policy that Christ Academy does not discriminate against any employee with regard to any terms or conditions of employment because of such individual's race, color, gender, national, and ethnic origin in its hiring policies.

5. The members of the Board of Trustees during the 2009-2010 academic school year were Benjamin (Chip) Filer, Matt Anderson, Janie Barry, Brady Beshear, Drew Carnes, Karen Chapman, John Phillip Dismukes, Johnelle Donnell, Anthony Levell, Laura Ramsey, Tom Stephens, Beth Sweet, and Linda Waters.

6. In 2010, the Board had seven committees: Executive Committee; Development Committee; Finance Committee; Prayer Committee; Building Committee; Human Resources Committee; and Nominating Committee.

7. The Finance Committee oversees the financial matters as directed by the Board.

8. Christ Academy hired Robertson as the Junior High Principal effective July 1, 2001.

9. Christ Academy employed Robertson as Junior High Principal for two years, Associate Principal for two years, and Headmaster for five years.

10. Robertson was promoted to Headmaster in 2005.

11. Robertson's one-year contract for Headmaster was renewed for four additional one-year terms.

12. As Headmaster, Robertson was responsible for the day-to-day operations of the school. She was ultimately responsible for implementing the Board's financial policies and overseeing the financial operations of the school.

13. In August 2006, Christ Academy hired Kelly as its part-time Development Director.

14. As the Development Director, Kelly initially reported directly to the Board; however, in 2009, the organizational structure of Christ Academy changed and Kelly was required to report to the Headmaster instead.

15. As the Development Director, Kelly was responsible for raising donations and pledges for Christ Academy's Annual Fund. The Annual Fund was used to help finance Christ Academy's operating costs.

16. In 2007, the Board began planning for a new facility and started a capital campaign.

17. Due to Kelly's role as the fundraising coordinator for the school, her position as the Development Director adapted to address Christ Academy's need to raise capital contributions for a new facility.

18. In 2009, Christ Academy offered Kelly a contract for a full-time position as Development Director at a salary of $42,000.

19. Robertson's contract for Headmaster during the 2009-2010 academic school year was $57,915.00.

20. Board members Benjamin Filer and Jeff Lemley gave Robertson a performance evaluation in April 2009.

21. Tommy Sugg ("Sugg") was employed by Christ Academy as Athletic Director.

22. On March 2, 2010, Sugg sent Benjamin Filer a text message that read "Keven could sure use your help in taking the lead w/ [Family M] situation – a man is needed! Thanks for all you do for CA. T. Sugg."

23. On March 2, 2010, Robertson requested a meeting with Benjamin Filer, Drew Carnes, Phil Dismukes, Brady Beshear, and Anthony Levell to discuss a personnel issue.

24. On March 4, 2010, the Nominating Committee held a meeting. During the meeting, several issues were raised regarding Robertson and the School's administration. The members determined that it was necessary to call a Special Board Meeting to discuss the issues with the other members of the Board.

25. On March 5, 2010, Robertson met with Benjamin Filer, Drew Carnes, Phil Dismukes, and Brady Beshear, and discussed Sugg.

26. On March 6, 2010, Benjamin Filer sent an e-mail message to the other members of the Board calling for a Special Board Meeting on March 9, 2010.

27. On March 9, 2010, the Board held a Special Board Meeting. During the meeting, the Board made the decision to request Robertson's and the Elementary School Principal's, Deanna Draper, resignation. The following Board members were present at the meeting: Benjamin Filer, Drew Carnes, Janie Barry, Laura Ramsey, Anthony Levell, Brady Beshear, John Phillips Dismukes, Karen Chapman, Johnelle Donnell, and Beth Sweet.

28. On March 10, 2010, Benjamin Filer met with Robertson to communicate the Board's decision and request her resignation. Mr. Filer told her that the reason for the request was due to her lack of leadership and that the School was going to lose 25 families.

29. On March 29, 2010, the Board held a Board meeting. The following Board members were present at the meeting: Benjamin Filer, Drew Carnes, Janie Barry, Laura Ramsey, Brady Beshear, Phil Dismukes, Karen Chapman, Johnelle Donnell, Beth Sweet, and Linda Waters.

30. On April 1, 2010, Benjamin Filer met with Kelly and informed her that Christ Academy was eliminating the position due to lack of funding.

31. Christ Academy hired Dr. Jerry Meadows to serve as its Chief Education Officer for the 2010-2011 academic school year.

32. On December 17, 2010, Robertson filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC").

33. On December 29, 2010, Kelly filed a charge of discrimination with the EEOC.

34. On March 25, 2011, the EEOC dismissed Kelly's charge of discrimination and advised Kelly of her right to bring suit within 90 days after receipt of the dismissal notice.

35. On June 21, 2011, the EEOC dismissed Robertson's charge of discrimination and advised Robertson of her right to bring suit within 90 days after receipt of the dismissal notice.

36. On June 21, 2011, Kelly filed this lawsuit.

37. Robertson joined in this lawsuit when an Amended Complaint was filed on June 23, 2011.

**CONTENTIONS OF THE PARTIES**

**Title VII—Discrimination—Gender**

1. Keven Robertson claims she was discriminated against because of her gender.

2. Robbie Kelly claims she was discriminated against because of her gender.

3. Defendant denies Robertson's claims and contends Keven Robertson was terminated due to lack of leadership and poor job performance.

4. Defendant denies Plaintiff Kelly's claims and contends Robbie Kelly's position was eliminated due to lack of funding, as well as concern about her aptitude and ability.

5. It is unlawful for an employer to discriminate against an employee because of the employee's gender.

6. To prove unlawful discrimination, Robertson and Kelly must prove by a preponderance of the evidence that Christ Academy terminated their employment because of their gender.

7. Robertson and Kelly do not have to prove that unlawful discrimination was the only reason Christ Academy terminated them.

8. If you disbelieve the reason(s) Christ Academy has given for its decisions, you may infer Christ Academy fired Keven Robertson and/or Robbie Kelly because of their gender.

9. You may not return a verdict for either Plaintiff just because you might disagree with Christ Academy's actions or believe them to be harsh or unreasonable. Under the law, employers are entitled to make employment decisions for a good reason, for a bad reason, or for no reason at all, so long as the decision is not motivated by gender. You should not second-guess Christ Academy's decision or substitute your own judgment for theirs.

**Title VII—Retaliation**

1. Plaintiff Keven Robertson claims she was retaliated against for engaging in activity protected by Title VII.

2. Plaintiff Robbie Kelly claims she was retaliated against for engaging in activity protected by Title VII.

3. Christ Academy denies Keven Robertson's claims and contends that it terminated Keven Robertson due to her lack of leadership and poor job performance.

4. Christ Academy denies Robbie Kelly's claims and contends that it eliminated Robbie Kelly's position due to lack of funding, as well as concern about her aptitude and ability.

5. It is unlawful for an employer to retaliate against an employee for engaging in activity protected by Title VII.

6. To prove unlawful retaliation, Keven Robertson must prove by a preponderance of the evidence that Christ Academy took an adverse employment action against her because she engaged in protected activity.

7. To prove unlawful retaliation, Robbie Kelly must prove by a preponderance of the evidence that Christ Academy took an adverse employment action against her because she engaged in protected activity.

8. Protected activity includes opposing an employment practice that is unlawful under Title VII, making a charge of discrimination, or testifying,

7

        assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. If the claim is for opposing an employment practice, Plaintiff must prove that she had at least a reasonable belief that the practice was unlawful under Title VII.

9. "Adverse employment action" is not confined to acts or harms that occur at the workplace. It covers those (and only those) employer actions that could well dissuade a reasonable worker from making or supporting a charge of discrimination.

10. Keven Robertson does not have to prove that unlawful retaliation was the sole reason Christ Academy terminated her.

11. Robbie Kelly does not have to prove that unlawful retaliation was the sole reason Christ Academy terminated her.

12. If you disbelieve the reason(s) Christ Academy has given for its decision, you may infer Christ Academy terminated Keven Robertson because she engaged in protected activity.

13. If you disbelieve the reason(s) Christ Academy has given for its decision, you may infer Christ Academy terminated Robbie Kelly because she engaged in protected activity.

14. You may not return a verdict for either Plaintiff just because you might disagree with Christ Academy's actions or believe them to be harsh or unreasonable. Under the law, employers are entitled to make employment decisions for a good reason, for a bad reason, or for no reason at all, so long as the decision is not motivated by or retaliation for an individual's protected activity. You should not second-guess Christ Academy's decision or substitute your own judgment for theirs.

**Title VII—Damages**

If the plaintiffs have proved their claims against Christ Academy by a preponderance of the evidence, you must determine the damages to which the plaintiffs are entitled. You should not interpret the fact that I have given instructions about the plaintiffs' damages as an indication in any way that I believe that the plaintiffs should, or should not, win this case. It is your task first to decide whether Christ Academy is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the defendants are liable and that the plaintiffs are entitled to recover money from the defendants.

1. If you found that Christ Academy violated Title VII, then you must determine whether Christ Academy has caused Keven Robertson and/or Robbie Kelly damages and, if so, you must determine the amount, if any, of those damages.

2. Keven Robertson must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Keven Robertson need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit. Robbie Kelly must prove her damages by a preponderance of the evidence. Your award must be based on evidence and not speculation or guesswork. On the other hand, Robbie Kelly need not prove the amount of her losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

3. You should consider the following elements of damages, and no others: (1) economic loss, which includes back pay and benefits; (2) punitive damages, and (3) compensatory damages, which include emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

4. Back pay and benefits include the amounts the evidence shows Keven Robertson and/or Robbie Kelly would have earned had she remained an employee of Christ Academy and includes fringe benefits such as health insurance, contributions to retirement, etc., minus the amounts of earnings and benefits, if any, Christ Academy proves by a preponderance of the evidence, that Keven Robertson and/or Robbie Kelly received in the interim.

5. There is no exact standard for determining compensatory damages. You are to determine an amount that will fairly compensate Keven Robertson and/or Robbie Kelly for any injury they have sustained. Do not include as compensatory damages back pay or interest on back pay and/or benefits.

6. Punitive damages are those damages designed to punish a defendant and to deter a defendant and others from engaging in similar conduct in the future.

7. In this case you may award punitive damages if Keven Robertson and/or Robbie Kelly proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act(s) or practice(s) was a managerial employee; (2) he/she engaged in the discriminatory act(s) or practice(s) while acting in the scope of his/her employment; and (3) he/she acted with malice or reckless indifference to Plaintiff's federal protected right to be free from discrimination.

8. If Keven Robertson and/or Robbie Kelly have proven these facts, then you may award punitive damages, unless Christ Academy proves by a preponderance of the evidence that the act was contrary to the employer's good faith efforts to prevent discrimination in the workplace.

9. In determining whether an employee was a "managerial employee" of Christ Academy, you should consider the type of authority that employee had over Keven Robertson and/or Robbie Kelly and whether Christ Academy delegated employment decisions to that employee.

10. An action was in "reckless indifference" to Keven Robertson's and/or Robbie Kelly's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Keven Robertson and/or Robbie Kelly are not required to show egregious or outrageous discrimination to recover punitive damages. However, proof that Christ Academy engaged in intentional discrimination is not enough in itself to justify an award of punitive damages.

11. In determining whether Christ Academy made "good faith efforts" to prevent discrimination in the workplace, you may consider things like whether it adopted anti-discrimination policies, whether it educated its employees on the federal anti-discrimination laws, how it responded to Keven Robertson's or Robbie Kelly's complaint of discrimination, and how it responded to other complaints of discrimination.

You may award damages for any pain and suffering, mental anguish, and/or loss of capacity for enjoyment of life that the plaintiffs experienced in the past or will experience in the future as a result of Christ Academy's conduct. No evidence of the value of intangible things, such as mental or physical pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate the Keven Robertson and/or Robbie Kelly for the damages they have suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in light of the evidence.

You may award damages for aggravation of any existing pain and suffering, mental anguish, and/or loss of capacity for enjoyment of life resulting from Christ Academy's conduct. If you find that there was such an aggravation, you should determine, if you can, what portion of Keven Robertson's and/or Robbie Kelly's condition resulted from the aggravation, and make allowance in your verdict only for the aggravation.

You must not award compensatory damages more than once for the same injury to the same plaintiff. For example, if a plaintiff prevails on two claims and establishes a dollar amount for her injuries, you must not award her any additional compensatory damages on each claim. A plaintiff is only entitled to be made whole once, and may not recover more than she has lost. Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of her injuries.

With respect to punitive damages, you may make separate awards on each claim that a plaintiff has established.

**DUTY TO DELIBERATE**

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

**SIGNED** this **16th** day of **August, 2012.**

_____
United States District Judge
Reed O'Connor

## JURY QUESTIONS - KEVEN ROBERTSON

### Question No. 1

Did Christ Academy terminate Keven Robertson because of Keven Robertson's gender?

Answer "Yes" or "No

_NO_

### Question No. 2

Did Christ Academy take an adverse employment action against Keven Robertson because Keven Robertson engaged in protected activity?

Answer "Yes" or "No."

_YES_

If you answered either Question No. 1 or No. 2 "yes," then answer Question No. 3.

### Question No. 3(a)

What sum of money, if paid now in cash, would fairly and reasonably compensate Keven Robertson for the damages, if any, you have found Christ Academy caused Keven Robertson?

Answer in dollars and cents for the following items and none other:

Back pay and benefits:

_58,000.00_

Emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life:

_42,000.00_

**Question No. 3(b)**

Based on the evidence presented, do you find that Keven Robertson should be awarded punitive damages?

Answer "Yes" or "No."

_____No_____

If you answered "Yes" to Question No. 3(b), then answer the following Question:

**Question No. 3(c)**

What sum of money should be assessed against Christ Academy as punitive damages for Keven Robertson?

Answer in dollars and cents:

_____-0-_____

## JURY QUESTIONS – ROBBIE KELLY

### Question No. 1

Did Christ Academy terminate Robbie Kelly because of Robbie Kelly's gender?

Answer "Yes" or "No."

___NO___

### Question No. 2

Did Christ Academy take an adverse employment action against Robbie Kelly because Robbie Kelly engaged in protected activity?

Answer "Yes" or "No."

___NO___

If you answered either Question No. 1 or No. 2 "yes," then proceed to Question No. 3.

### Question No. 3(a)

What sum of money, if paid now in cash, would fairly and reasonably compensate Robbie Kelly for the damages, if any, you have found Christ Academy caused Robbie Kelly?

Answer in dollars and cents for the following items and none other:

Back pay and benefits:

___-0-___

Emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life:

___-0-___

**Question No. 3(b)**

Based on the evidence presented, do you find that Robbie Kelly should be awarded punitive damages?

Answer "Yes" or "No."

_____NO_____

If you answered "Yes" to Question No. 3(b), then answer the following Question:

**Question No. 3(c)**

What sum of money should be assessed against Christ Academy as punitive damages for Robbie Kelly?

Answer in dollars and cents:

_____-0-_____

## **JURY QUESTIONS**

The foreperson should sign and date the Form of Verdict.

_____          ___8/16/12_____
Foreperson                                                    Date